## PLYMOUTH TOWNSHIP v. HERMAN KLUG.

(145 N. W. 130.)

**Quarantine — township board — order for, given by telephone — not at regular meeting — regularity — order for necessaries by defendant — paid for by board — defendant liable — implied promise to pay.**

Defendant was placed in quarantine by the township board upon orders given by the members of the board over the telephone, and not at a regularly called meeting. After the establishment of the quarantine, defendant requested the chairman of the board to have some groceries sent to his farm from a neighboring village. The groceries were so furnished, and the charges for transportation, amounting to $15, were paid by the township board, which later attempted to collect from the defendant. Defendant insists that the quarantine was irregular, because not established at a legal meeting of the board, and therefore the charge against him for drayage is illegal.

*Held,* that defendant is bound upon an implied promise to pay for the services, and moreover such quarantine was legally established by the board without a formal meeting.

Opinion filed January 20, 1914.

Appeal from the District Court of Grand Forks County, *Templeton,* J.

Affirmed.

*Frank B. Feetham,* for appellant.

The statutes provide a method by which boards of health can make and publish general rules relative to the establishment of quarantine, and thereafter, when so provided by such rules, the attending physician, town clerk, or any other official, can order quarantine without a meeting of the board. Rev. Codes 1905, §§ 269, 270; Young v. Blackhawk County, 66 Iowa, 460, 23 N. W. 923.

In this case no such rules or regulations were ever made by any board of health, and the requirements of the statutes have not been met. Rev. Codes 1905, §§ 282, 3116–3118, 3123, 3227.

These orders and rules of the board of health are in the nature of special laws, and must be pleaded and proved before the courts will take notice of them. State v. Butts, 3 S. D. 577, 19 L.R.A. 725, 54 N. W. 603.

Official powers must be exercised not only in the manner prescribed by law, and in the name of the public, but by an *official body or board* acting as such at a meeting authorized and duly called as by law provided. 2 Abbott, Mun. Corp. § 655, p. 1578; Forcum v. Montezuma Independent Dist. 99 Iowa, 435, 68 N. W. 803; Conger v. Latah County, 5 Idaho, 347, 48 Pac. 1064; Blue v. Briggs, 12 Ind. App. 105, 39 N. E. 886.

The determination of the members *individually* is *not* the act by *the board.* McCullough v. Moss, 5 Denio, 577; Livingston v. Lynch, 4 Johns. Ch. 596; Rice v. Plymouth County, 43 Iowa, 136; Taylor v. Wayne, 25 Iowa, 447; Young v. Blackhawk County, 66 Iowa, 460, 23 N. W. 923.

*O. B. Burtness,* for respondent.

Sections 3116 to 3125, Revised Codes of 1905, govern the matters here presented, and make it the duty of the board of health to *immediately* care for a person infected with a contagious disease. These laws have for their object the preservation of the health of the community. Such board may act in a summary manner in emergency. Rev. Codes 1905, § 3131.

The quarantine in this case was *necessary,* required *immediate* action, and the acts were regular and within the powers of the board, and the defendant asserted, in April, 1910, that he was *under quarantine* and asked the township board to furnish him with goods. He cannot now be heard to contradict these facts. The board furnished him the goods, —necessaries;—he accepted the benefits, and is bound thereby. 16 Cyc. 784 and following pages; Rae v. Flint, 51 Mich. 526, 16 N. W. 887.

In such cases, the statutes do not contemplate a formal meeting of the board before action can be taken to preserve the health of the people. Rev. Codes 1905, §§ 3131, 3132; Rae v. Flint, supra.

BURKE, J. The plaintiff is an organized township in Grand Forks county, and the defendant is a farmer residing within the township. In April, 1910, some of defendant's children and a hired man became sick, and upon calling a physician the same was pronounced to be scarlet fever, a contagious disease. The doctor immediately called upon the clerk of the township board and notified him of the existence of the disease, but did not post any written notice of the quarantine until some days later, for the reason that he happened to have no placards with him. Upon receiving the notice from the doctor, the clerk telephoned to the chairman of the town board, who in turn called up the other members of the board individually upon the telephone, and discussed the situation. After such a discussion, the chairman called up the clerk and directed him to post quarantine notice upon the defendant's farm, which was immediately done. Defendant obeyed the quarantine notice, and a day or two later called upon the chairman of the board and asked him, inasmuch as he was under quarantine and could not go to town for groceries, to send the stuff out to him. A day or two after this, the town board had a meeting whereat, upon motion, the board authorized the clerk to hire a drayman to furnish provisions to the defendant, and under this arrangement the township expended the sum of $15 in delivering groceries, etc., to the defendant. The goods were delivered by a drayman of the village of Niagara, who presented a bill of $15 to the township and received his pay. When the township presented the bill to the defendant, however, he refused payment, and this suit resulted. In appellant's brief it is stated: "The matter presented to this court is the broad question, under these undisputed facts, Can the township recover of the defendant? If it can, the judgment must stand; if it cannot, the defendant is entitled to judgment." It is conceded that the township board took no action at its regular meeting relative to the establishment of the quarantine, as they considered the matter had been fully cared for in the conversations held over the telephone.

(1) Appellant contends that the quarantine established by conversations over the telephone instead of at a regular meeting was invalid and a nullity, and reasons therefrom that all expenses incurred by the township were likewise invalid, and not a charge against the defendant. The respondent, on the other hand, insists that the question of the valid-

ity of the quarantine is immaterial insomuch as the defendant personally requested the township board to furnish the services for which the charge is made, and that in effect he is liable under an implied promise to pay for the services, and besides is estopped by reason of his said request to now deny the existence of the quarantine.

We think that the township is correct in its contention. The defendant believed that he was under quarantine and requested the township to transport his groceries to him. While it is possibly his construction of the law that this was a township charge, yet he is chargeable with knowledge that the expense in turn could be charged against him if he were financially responsible, and he has not alleged the contrary in this case. Thus, his situation is very similar to what it would have been had he called up the drayman himself and asked him to deliver his goods to the farm. Of course, it cannot be contended in such case that the invalidity of the quarantine would prevent the drayman from recovering. Having requested the township to render him the same services, why is he not as liable to them? If appellant says in answer to this question that the township had established a pretended quarantine, and that therefore they were themselves responsible for the expense, the answer can be made that, even though irregular, the quarantine was established in good faith and the expenses incurred in the same manner, and we are of the opinion that the defendant is estopped to claim any irregularity unless he can show some bad faith upon the part of the township.

Moreover, we think the quarantine was in fact regular. The powers of the township board are prescribed by law, and among others we find § 282, Rev. Codes 1905: "It shall be the duty of each local board of health whenever it shall come to its knowledge that a case of . . . contagious disease exists within its jurisdiction, immediately to examine into the facts of the case, and if such disease appears to be of the character herein specified, such board shall adopt such quarantine and sanitary measures as in its judgment tend to prevent the spread of such disease . . . " While it is true that the meetings of the township board must be upon three days' notice, yet we do not believe the statute contemplated the delay of a regular meeting when such an emergency

as a contagious disease is presented. To require the board to act in this deliberate manner might defeat the very object of a quarantine law. Besides the law, as above quoted, says that the board shall "immediately" examine, etc.

In Rae v. Flint, 51 Mich. 526, 16 N. W. 887, "the city of Flint did not see fit to create a board of health as a distinct agency, but elected the policy authorized by the statute of 1879. The whole duty and the whole authority remain therefore in the common council. No part of either was transferred. The duty to guard the public health and prevent the spread of contagion was imperative, and the power of the common council was commensurate with the duty. Neither the power nor the obligation could be lessened by the failure to designate a subagency."

We think it was the duty of the clerk to establish the quarantine in this case without waiting for the formality of a three days' notice meeting.

The trial court took this view of the law, and directed a verdict for the plaintiff, and the same is accordingly affirmed.