BISHOP *v.* BOARD OF SUPERVISORS OF OTTAWA COUNTY.

1. HEALTH—CONTAGIOUS DISEASES—COUNTIES — LOCAL BOARDS— ITEMIZED ACCOUNT.

   A local board of health is not required to keep, in a book of its own, an account of the items furnished each person sick of a contagious disease, if it has such an account before it, and is able to render the itemized and separate statement required by the statute. *Township of Cedar Creek* v. *Board of Sup'rs of Wexford County,* 135 Mich. 124, followed.

2. SAME—COUNTIES—CLAIMS—PAYMENT BY MUNICIPALITY.

   Where expenses are incurred in the case of an indigent person afflicted with a contagious disease, it is not necessary, under Act No. 7, Pub. Acts 1903, that the municipality first pay the claim and then present it to the board of supervisors, but the claimant may make his claim direct to the board in the first instance.

3. SAME—BOARD OF SUPERVISORS—POWERS—AUDITING CLAIMS.

   Boards of supervisors have no power, under Act No. 7, Pub. Acts 1903, to reject a claim for services rendered by order of a local board of health, without giving the claimant an opportunity to be heard and to present proof in its support. *City of Monroe* v. *Board of Sup'rs of Monroe County,* 137 Mich. 638, followed.

4. SAME—SERVICE RENDERED—LIABILITY OF COUNTY.

   The services of a person employed as a quarantine guard to prevent the spread of a contagious disease are a proper basis for a claim under the act.

   140 Mich.—12.

Certiorari to Ottawa; Padgham, J.   Submitted April 7, 1905.   (Docket No. 44.)   Decided May 12, 1905.

Mandamus by Harry T. Bishop to compel the board of supervisors of Ottawa county to audit and allow a claim for services rendered during an epidemic of smallpox. There was an order granting the writ, and respondent brings certiorari.   Affirmed.

*Dan F. Pagelsen*, for relator.

*Smedley & Corwin*, for respondent.

McAlvay, J.   This is a proceeding by writ of certiorari to review the action of the circuit court for Ottawa county in a certain mandamus proceeding.   Harry T. Bishop was employed by the health officer of the city of Grand Haven as quarantine guard, at the time of a smallpox epidemic in said city, to watch during the nighttime a certain house in which there were patients infected with said disease, and to prevent the spread thereof.   He so acted for 35 nights, charging for such services $1.50 per night.   An itemized bill for such service was approved by the said health officer, and at a meeting of the board of health of the city of Grand Haven was duly audited, and the amount thereof approved, and fixed at the sum of $52.50.   The approval of the health officer was indorsed upon said itemized account, as was also the audit and approval of the said board of health, duly certified thereon by the clerk of said board.   This account, with the indorsement thereon, was duly filed with the county clerk, and presented to the board of supervisors of Ottawa county for allowance and payment.   The claim was rejected by the board of supervisors, and claimant then filed his petition for a mandamus in the circuit court for Ottawa county to compel said board to audit and allow said claim. This petition set up the facts as hereinbefore briefly narrated.   The answer of the board of supervisors admitted all the facts, but denied that the employment of relator by the health officer, and his approval of the bill rendered,

and its allowance by the board of health were final, and denied that it was the duty of the board of supervisors to audit and pay said claim, or to ascertain if it was excessive, or if the person having the smallpox was an indigent person, and admits that it did not do so, but referred the claim to the proper committee, "who, upon careful and impartial investigation, rejected the same." Upon the hearing before the circuit court, the trial judge found the facts as herein stated, and that the claim was one properly to be brought before respondent for its investigation, and that it was its duty to pass upon said claim as provided by Act No. 7 of the Public Acts of 1903. A writ of mandamus was accordingly granted, ordering the board of supervisors "to at once proceed to audit the said claim, and to investigate whether or not the said expenses were necessarily incurred, and whether or not the services were actually and necessarily performed, and whether or not the amounts claimed for such services are severally just and reasonable, under the circumstances, and that notice be given to said claimant of the time when action on said bill would be taken."

The case was presented on briefs and oral argument by both sides.

Respondent contends: *First.* That under the provisions of Act No. 7, Pub. Acts 1903, the county cannot be called upon to audit and pass upon this claim until after it has been allowed and paid by the municipality; that the claim against the county must be made by the municipality, and not the individual. *Second.* That the county is not liable for expenses incurred in keeping a watchman to watch a house infected with a contagious disease.

The section of the statute under which proper claims of the kind under discussion could be made a charge against a county was enacted in 1846 (being section 1647, 1 How. Stat.), and reads as follows:

"When any person * * * shall be infected * * * with smallpox * * * the board of health * * *

shall make effectual provision    *   *   *   for the safety of the inhabitants    *   *   *   providing nurses and other assistance and necessaries which shall be at the charge of the person himself,.his parents, or other person who may be liable for his support, if able; otherwise at the charge of the county to which he belongs."

By amendment (Act No. 97, Pub. Acts 1895) the following was added:

"*Provided,* That the health board shall keep and render an itemized and separate statement of expenses incurred in so caring for each person."

Act No. 7, Pub. Acts 1903, made some slight changes in the body of said section, and, striking out the words in the last line of the original section, "otherwise at the charge of the county to which he belongs," added:

"*Provided,* If such person, his parents, or other person who may be liable for his support be not able to pay for such assistance and necessaries, the board of health shall keep an itemized and separate statement of expenses incurred for each and every person cared for under this section, and shall render such statement to the board of supervisors of the county by filing the same with the county clerk. And the said board of supervisors shall, as soon as may be, proceed to audit the said bill, and if found that the expenses were necessarily incurred, the services actually and necessarily performed, and the amounts claimed for such expenses and services are severally just and reasonable under the circumstances, the said board of supervisors shall allow the same or such parts thereof as the majority of the members elect of said board shall deem just, and provide for their immediate payment by the said county, and in auditing such accounts, said several boards of supervisors shall have full power to examine into the merits of all claims presented to them in accordance with the provisions herein contained, and may subpœna witnesses and take any other measures necessary to arrive at the truth of the same."

Under this law as first enacted, it has been held repeatedly by this court that the action of the boards of health of the municipalities was final, if such action complied with the terms of the statute, and that the claims audited and

allowed by them must be paid by the boards of super-visors. *Elliott* v. *Board of Sup'rs of Kalkaska Co.*, 58 Mich. 452; *McKillop* v. *Board of Sup'rs of Cheboygan Co.*, 116 Mich. 614, and many other cases. The requirements of the amendment of 1895 that the health board keep and render an itemized and separate account of expenses incurred in so caring for each person was held to be mandatory. *Village of Durand* v. *Board of Sup'rs of Shiawassee Co.*, 132 Mich. 448.

In the case of *Township of Cedar Creek* v. *Board of Sup'rs of Wexford Co.*, 135 Mich. 124, where the cases upon this question are cited and approved, this court said:

" We are of the opinion that the allowance by the township board of health, which is identical with the township board in townships, was designed to be final, and, where the law imposes the liability upon counties, it was intended that the allowance by the township board should bind the board of supervisors as to the character of the disease, the necessity and fitness of the articles and services furnished and rendered, as well as the fact that they were furnished."

In this case, also, as in the case at bar, it was urged that the health board did not comply with the proviso requiring the health boards " to keep and render an itemized and separate statement of expenses incurred in so caring for each person." Whether a book was kept by the board of health of Grand Haven does not appear from this record, but it does appear in this case, as in case of *Township of Cedar Creek* v. *Board of Sup'rs of Wexford Co.*, supra, that they had before them an itemized account, and certified thereto. This court held:

"This was a sufficient compliance with the statute. The requirement to keep and render an account is met when the board is able to render the itemized and separate statement required by statute."

Only in cases of *indigent* persons could these claims become a county charge, formerly, under the original statute, upon the finding of this fact by the local health

board; then, after the first amendment, the additional requirements that said board keep and render an itemized and separate account in each case.

The contention is here made that the amendment of 1903 now requires that the municipality must first make payment of such claims to the person performing the services or furnishing the supplies, and that the municipality must present the claim to the county. We do not so construe the statute, nor has this court so construed the former statutes in these cases. Many of the cases have been brought by municipalities against counties where these claims have been paid by the municipalities and have been allowed as county charges, but this court has never held that the individual was obliged to look to the municipality for pay for claims which were proper charges against a county. The amendment requires an audit of these claims by the board of supervisors, and a full examination into the merits as to the services rendered or expenses incurred, and to allow the same, or so much thereof as may be just and reasonable under the circumstances, by a majority of the board. In this case the board did not comply with this statute, and took no steps in the matter, except to refer it to the committee on miscellaneous claims, which rejected the same. The answer admits that no witnesses were subpœnaed to ascertain the validity of the claim, or to ascertain whether the services had been rendered, or the value thereof.

In *City of Monroe* v. *Board of Sup'rs of Monroe Co.*, 137 Mich. 638, the court said:

" It was intended by this law [1903] to give the boards of supervisors the right, which they did not theretofore have, of determining the propriety and reasonableness of bills incurred by local boards of health. It is conceded by the relator and by the circuit judge that, under the new law above quoted, the decision of boards of supervisors which have legally investigated such bills is final. But can such a bill be rejected without giving to the claimant who presents it an opportunity of being heard? While the statute does not expressly provide that this opportunity shall be given, such a provision is necessarily implied."

The further contention is made that in any event this is not in its nature such a claim as comes within the intendment of the statute. Claimant was employed as a quarantine guard to watch the premises in order to prevent the spread of smallpox. It is apparent that such services are usual and absolutely necessary in such cases. The claim in *City of Monroe* v. *Board of Sup'rs of Monroe Co.*, supra, was for services in acting as watchman.

This statute has been liberally construed. It has been recognized that these are exigency cases, and that the public safety demands the greatest diligence on the part of public officers to prevent public calamity. We find no error in this record.

The learned circuit judge, in his order above referred to, granting the writ, followed the statute, and required the board of supervisors to do only that which by the plain terms of the law they should have done without the necessity of a court proceeding.

The order of the circuit court granting the writ of mandamus is affirmed, with costs.

CARPENTER, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.